IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ALMEXA, S.A. DE C.V., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 1:24-cv-00088 |
| | § | |
| SENOX CORPORATION, | § | |
| | § | |
| Defendant. | § | |

# COMPLAINT

Plaintiff Almexa, S.A. de C.V. ("Almexa") files this Complaint against Defendant Senox Corporation ("Senox"), and in support thereof alleges as follows:

## INTRODUCTION

1. This is an action for breach of contract and unjust enrichment arising out of Senox's failure to satisfy a debt due and owing Almexa exceeding $5,000,000.

2. From January 2022 through February 2023, Almexa timely and properly delivered to Senox more than 17 million pounds of aluminum coils worth nearly $39,000,000 which met the specifications required by Senox under a valid and enforceable supply contract effective as of December 16, 2021 (the "Agreement").

3. Payment for the aluminum coils delivered by Almexa to Senox was due within 30 days of the date of invoice but, despite the passage of more than ten months since the last invoice, and repeated demands on the part of Almexa to collect payment under the parties' Agreement, full payment has not been made to date.

4. Senox disregarded its contractual obligation to pay for the goods received after Almexa satisfied its obligations by delivering coils of aluminum that met contractual specifications.

5. Senox therefore owes Almexa a total of $5,017,051.32, plus incidental and consequential damages, pre- and post-judgment interest, and costs, on the past-due invoices.

## THE PARTIES

6. Plaintiff Almexa is a Mexican stock corporation (Sociedad Anonima de Capital Variable) with its principal place of business located in Benjamin Franklin No. 9. Parque Industrial La Joya, Cuautitlan Izcalli, Estado de Mexico, Mexico 54730.

7. Defendant Senox is a Texas corporation with a principal place of business located at 15409 Long Vista Drive, Austin, Texas 78728-3815. Senox may be served with process through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

## JURISDICTION AND VENUE

8. This Court has diversity jurisdiction under 28 U.S.C. § 1332(a)(2) because Plaintiff Almexa is a citizen of a foreign state and Defendant Senox is a citizen of Texas, and the amount in controversy in this lawsuit exceeds the sum or value of $75,000, excluding interest or costs.

9. Venue is proper in the United States District Court for the Western District of Texas, Austin Division under 28 U.S.C. §§ 1391(b)(1)-(3) because Defendant Senox resides in this district and would therefore be subject to this Court's personal jurisdiction, and because the events or omissions giving rise to Plaintiff Almexa's claims occurred in substantial part in this judicial district.

**FACTUAL BACKGROUND**

10. Almexa is a manufacturer of semifinished aluminum products, including aluminum coils, flat sheets, and discs.

11. According to its own website, Senox "is a leading manufacturer and supplier of seamless gutter products for residential and light commercial construction."

12. Almexa's business relationship with Senox began in 2021, when Senox was introduced to Almexa by Vorteq Coil Finishers, a custom aluminum coil coater with which Almexa and Senox had longstanding preexisting relationships.

13. In 2021, Senox purchased from Vorteq 4.853 million pounds of coated Almexa-manufactured aluminum coil.

14. During 2021, Senox sought out Almexa as a potential direct supplier of aluminum coil.

15. Specifically, Senox advised Almexa that Senox would prefer to purchase uncoated aluminum coils directly from Almexa and coat the coils itself, rather than purchase the more expensive coated aluminum from Vorteq.

16. Senox sought out Almexa as a direct supplier after having ample opportunity to work with Almexa-manufactured aluminum coils.

17. During November and December of 2021, Almexa and Senox began discussing a formal relationship in earnest, including an offer by Senox to acquire an equity interest in Almexa.

18. Although Senox's plan to acquire an equity interest in Almexa never came to fruition, Almexa and Senox remained interested in establishing a direct contractual relationship.

19. At the time, Almexa disclosed that its manufacturing capacity was insufficient to supply all of Senox's aluminum coil requirements.

20. Nevertheless, Almexa disclosed to Senox certain confidential strategic expansion plans in Mexico that would increase its production capacity.

21. Almexa further advised Senox that a contractual supply relationship between those entities would provide Almexa the funds needed to achieve its expansion goals in 2022, and thus shorten the timeline needed for Almexa to meet Senox's entire aluminum coil requirements.

22. At all relevant times, Senox was an expert in its field and knew and understood its requirements and specifications better than Almexa.

23. In December 2021, Senox drafted a proposed contract for it and Almexa to formalize a long-term supply relationship.

24. Senox's draft included all the requirements and specifications Senox expected Almexa to meet.

25. Notably, Senox's draft specifications did not include any flatness requirements.

26. After a few exchanges between the parties to define certain pricing, payment, delivery and output terms, Almexa and Senox ultimately entered into the written Agreement on December 16, 2021. A true and correct copy of the Agreement is attached as Exhibit A.

27. Pursuant to the Agreement, Almexa agreed to manufacture and supply, and Senox agreed to purchase, aluminum coil that met certain technical specifications for the January-December 2022 period.

28. The Agreement provided that Senox would purchase at least 24 million pounds of aluminum during the 12-month period at a fixed price of $0.78 per pound, including all freight costs FOB all Texas locations designated by Senox.

29. Senox further agreed to pay all Almexa invoices within 30 days of issuance.

30. At the time it finalized the Agreement, Senox had been purchasing aluminum coils from Almexa for months and knew exactly what to expect from Almexa.

31. Again, the final Agreement, as with the initial draft, did not include any flatness requirements in the specifications for the aluminum Almexa agreed to supply.

32. Almexa began delivering coil to Senox under the Agreement in January of 2022.

33. From the outset of their relationship in 2021, and carrying into 2022, Senox repeatedly advised Almexa that it was running out of inventory and requested more and more aluminum coil be shipped from Mexico to Texas.

34. Indeed, Senox repeatedly requested that Almexa "turn on the [aluminum coil] faucet and break the handle off."

35. From December of 2021, when their relationship began, until February of 2023, when Almexa made its last delivery under the Agreement, Senox issued purchase orders for more than 17 million pounds of aluminum coil.

36. Almexa shipped and invoiced Senox under the Agreement for 17,218,517 pounds of aluminum coil from January of 2022 to February of 2023.

37. Almexa's invoices to Senox from January of 2022 to February of 2023 totaled $38,823,922.14, of which Senox paid only $33,228,546.44.

38. During their contractual relationship, Senox took issue with certain coils invoiced and delivered by Almexa between January 2022 and January 2023, because they did not meet specifications.

39. Almexa accepted Senox's specification-based rejections, and credited Senox's account for those coils in the amount of $578,324.38.

40. Otherwise, Senox did not object to or otherwise reject any of Almexa's invoices on the basis that the coils failed to meet contract specifications.

41. In early 2022, when war broke out in Eastern Europe, the armed conflict raised concerns among members of the industry that global aluminum supplies would drop resulting in a spike in prices.

42. Indeed, the market price for aluminum coil peaked between January and April of 2022.

43. Senox was fortunate at the time, however, as it had locked in a price with Almexa and, upon information and belief, began purchasing more aluminum than it could process to get ahead of the market.

44. But fears over limited supplies and increased pricing proved wrong and, after that brief spike, prices ultimately began dropping—at times precipitously.

45. In the fall of 2022, Senox suddenly requested that Almexa slow its production and shipment of aluminum coils because, according to Senox, it had run out of warehouse space.

46. Upon information and belief, Senox had been stockpiling aluminum coils since early in the parties' relationship while telling Almexa it was processing so much aluminum it could not keep product in stock.

47. But by the end of 2022, the cost of aluminum coils had fallen so much that Senox could source its raw materials from other suppliers at prices that fell below those in the Agreement.

48. Thus, Senox was now on the hook for millions of pounds of aluminum at a contract price that was above the global market price and needed to find an excuse to get out of the Agreement.

49. Senox asked Almexa to stop shipping it product, arguing that the same product it previously could not get enough of, was now somehow unacceptable because it was insufficiently flat.

50. This was mere pretext, as the Agreement, which Senox itself drafted, and the updated engineering material specification sheet executed months later, contained no flatness requirements or specifications.

51. Senox still owes Almexa $5,017,051.32 for aluminum coils delivered under the contract, payment for which is past due.

52. Almexa has made repeated demands for payment.

53. Senox has refused to pay.

54. Senox's refusal to pay is unjustified.

55. Moreover, Senox was and is aware that Almexa relied on the parties' relationship and commitments under the Agreement to fund its expansion plans in Mexico.

56. Almexa's expansion has been stalled, and Almexa now owes millions of dollars to third parties, because of Senox's unjustified refusal to pay what it owes.

57. Almexa's inability to fund its expansion as a result of Senox's breach also has caused Almexa millions of dollars in lost sales.

58. There is no indication that Senox is willing to pay the amounts owed to Almexa despite due demand having been made.

## CAUSES OF ACTION

### COUNT I – Breach of Contract

59. Almexa restates and incorporates by reference herein the allegations in all preceding paragraphs.

60. The Agreement, and each relationship formed by Senox with Almexa by sending purchase orders for goods, which Almexa fulfilled and then delivered to Senox, give rise to valid and enforceable contracts.

61. As a party to the contracts, Almexa is the proper party to bring suit.

62. Almexa performed its obligations under the contracts by fulfilling Senox's orders through the delivery of goods that met the specifications set forth in the Agreement.

63. All other conditions precedent have been met and satisfied.

64. Senox has breached its contractual obligations by failing to make payment within 30 days of the invoice date.

65. Almexa has been harmed and is entitled to damages in an amount to be determined at trial, but not less than $5,017,051.32, plus incidental and consequential damages— including its inability to complete its expansion project— and pre- and post-judgment interest, plus costs, by reason of Senox's refusal to pay for the goods that Almexa timely and properly delivered.

### COUNT II – Quantum Meruit/Unjust Enrichment

66. Almexa restates and incorporates by reference herein the allegations in all preceding paragraphs.

67. Senox requested that Almexa supply it with millions of pounds of aluminum coils beginning in January of 2022.

68. Almexa supplied Senox with millions of pounds of aluminum coils from January of 2022 through February of 2023.

69. Almexa supplied Senox with the aluminum coils with the reasonable expectation that it would be paid for those goods.

70. Senox requested, accepted and utilized the aluminum coils expecting to pay for them or under such circumstances that Senox knew, or any reasonable business organization would know, that Almexa expected to be paid.

71. By failing to pay Almexa the sums owed, Senox was unjustly enriched and is indebted to Almexa under the theory of quantum meruit or unjust enrichment in an amount to be determined at trial, but not less than $5,017,051.32, plus pre- and post-judgment interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Almexa, S.A. de C.V. requests that the Court enter judgment in its favor and against Defendant Senox Corporation as set forth below:

a) On its First Count for amounts due and owing under the Agreement including but not limited to $5,017,051.32 in unpaid invoices, as well as incidental and consequential damages;

b) In the alternative, on its Second Count, for amounts due and owing for goods supplied to Senox in an amount no less than $5,017,051.32;

c) On all counts for pre- and post-judgment interest and costs, and attorney's fees as allowed by law; and

d) For such other and further relief as the Court deems just and proper under the circumstances of this case.

Dated: January 25, 2024

Respectfully submitted,

GORDON REES SCULLY MANSUKHANI, LLP

By:     /s/ J. Andrew Hutton
        State Bar No. 24012878

2705 Bee Caves Road, Suite 220
Austin, Texas 78746
(512) 391-0197 Tel
(512) 391-0183 Fax
Email: ahutton@grsm.com

And

Jason J. Irvin
State Bar No. 24032460
GORDON REES SCULLY MANSUKHANI, LLP
2200 Ross Avenue, Suite 3700
Dallas, Texas 75201
(214) 231-4600 Tel
(214) 461-4053 Fax
Email: jirvin@grsm.com

**ATTORNEYS FOR PLAINTIFF
ALMEXA S.A. DE C.V.**